# NEW HAMPSHIRE INSURANCE COMPANY ®    Boston, Massachusetts

This is a declaration page with Policy Provisions - Section A and Endorsements, if any, to issue and form part thereof, completes the below numbered policy of the NEW HAMPSHIRE INSURANCE COMPANY, A CAPITAL STOCK COMPANY.

**Policy No.YM 583-93-22**                                                                                              New

Effective Date From: 10/24/2007 to 10/24/2008  at 12:01 a.m. Standard Time at place of issuance.

| Producer: 1871011 | Named Insured: |
|---|---|
| International Special Risks, Inc. | Green Dragon Trading Company c/o |
| Auburn Hall, Building III | Dombrowski & Sorensen Attorney At Law |
| 60 Pineland Drive, Suite 307 | 670 N. Clark |
| New Gloucester, ME  04260 | Chicago, IL  60610 |

Coverage applies to items below only when amount and limits are specified.

| Section | Coverage Description | Limits | Deductible | Premium |
|---|---|---|---|---|
| A | HULL (Agreed Value) | $1,000,000 | $20,000 | $8,664 |
|  | Tender | $20,000 | $500 | Inc. |
| B | PROTECTION & INDEMNITY<br>Longshoremen's & Harbor Workers compensation insurance as provided in public act 803 of the 69th congress, as amended.<br>Includes coverage for 2 crew. | $2,000,000 | N/A | $1,457 |
| C | Medical Payments | $10,000 | N/A | Inc. |
| E | Towing | $2,500 | N/A | Inc. |
| F | Personal Effects | $10,000 | $250 | Inc. |
| G | Uninsured Boater | $500,000 | N/A | Inc. |
| H | Fuel Spill Liability | $800,000 | N/A | Inc. |

Endorsements: MAN-6, B-8, Nav-15, W-2, W-5, W-1, MAN-3, MAN-1, MAN-2  $0
Nav-25

|  | TOTAL PREMIUM | $10,121 |
|---|---|---|

**Description of Vessel: Year Built** 1992  **Manufacturer:** Swiftship
**Length:** 85 ft  **Model:**
**Name:** LE VIPER                    Hull Serial # 726611
**Description of Motors Year Built** 1989  **Manufacturer:** Detroit
                                                     **Serial#** P:16VF8628
                                                     **S:**

Navigation Limits Warranty: Warranted confined to the use and navigation of coastal waters and tributaries thereto of the Atlantic Ocean, Gulf of Mexico, Bahamas and Caribbean Sea from Eastport, Maine to Brownsville, Texas, not south of 10 degrees north latitude. Excluding Colombia, Dominican Republic, Cuba & Haiti.

Countersigned:  11/20/2007
M O Taxloc NY

*Chrtphr L. Posca*

MARITIME GENERAL AGENCY

EXHIBIT "A"

The declarations page and endorsements attached hereto, are made part of, and attach to, policy form:BJP 2191-A (8/06)

This Endorsement #: 1                    Effective: 10/25/2007

Attached To And Forming Part Of Policy #: YM 5839322

Of The: New Hampshire Insurance Co.

Issued To: Green Dragon Trading Company c/o

### CREW COVERAGE

In consideration of an additional premium of $**INCLUDED**, it is hereby understood and agreed the liability coverage of the present policy, covers the assured's liability to paid crew as defined in the Jones Act or under the general maritime law, for loss of life, injury or illness.

It is warranted that there shall not be more than **TWO** crew member(s) employed aboard the insured vessel at any one time. Furthermore, it is understood and agreed that in the event additional crew are to be employed during the term of this policy, the assured shall give prior notice to the company and pay such additional premium as is required. If the assured shall fail to give such prior notice and the time of an accident in respects to crew there is a greater number employed than that which is stated above or on endorsements attached hereto, the insurance shall respond only in proportion that the stated number of crew bears to the number on board at the time of accident.

Notwithstanding the aforementioned, the company's maximum limit of liability under the policy shall not exceed the amount of insurance shown for liability coverage on the declaration page or endorsements attached thereto.

All other conditions remaining unchanged.

Dated: 11/20/2007

_____
Maritime General Agency

Endorsement Form: B-8

This Endorsement #: 2                          Effective: 10/25/2007

Attached To And Forming Part Of Policy #: YM 5839322

Of The: New Hampshire Insurance Co.

Issued To: Green Dragon Trading Company c/o


## INLAND WATERS & GREAT LAKES NAVIGATION


The navigation warranty of this policy is extended to include the use and navigation of inland waters of the US and Canada, including the Great Lakes & St. Lawrence River, not East of Quebec.


All other terms and conditions remain unchanged.


Dated: 11/20/2007

Maritime General Agency

Endorsement Form: Nav-15

This Endorsement # 3                    Effective: 10/25/2007

Attached To And Forming Part Of Policy #: YM 5839322

Of The: New Hampshire Insurance Co.

Issued To: Green Dragon Trading Company c/o

### NAVIGATION ENDORSEMENT

In consideration of premiums charged, $0 the navigation limits of this policy are amended to include:
Warranted the yacht is not south of Morehead City, NC between 6/30 and 11/1.

Dated: 11/20/2007

Maritime General Agency

Endorsement Form: Nav-25

This Endorsement #: 4                    Effective 10/25/2007

Attached To And Forming Part Of Policy #: YM 5839322

Of The: New Hampshire Insurance Co.

Issued To: Green Dragon Trading Company c/o

## **CAPTAIN WARRANTY**

It is warranted that during all navigation and operation of the insured vessel, a full time paid captain shall be on board and in charge of the vessel.

Dated: 11/20/2007

Maritime General Agency

Endorsement Form: W-2

This Endorsement # 5                      Effective: 10/25/2007

Attached To And Forming Part Of Policy #: YM 5839322

Of The: New Hampshire Insurance Co.

Issued To: Green Dragon Trading Company c/o

## Mechanical Breakdown Exclusion

It is agreed and understood that this policy does not cover any loss or damage to the yacht's engines, generators, outdrives and running gear (referred to herein as "Propulsion Machinery") resulting directly or indirectly, in whole or in part, from any of the following causes of loss whether such causes directly or indirectly cause, contribute to or aggravate the loss; or occur before, at the same time or after the loss; or whether other causes act concurrently or in any sequence with the excluded cause:

a) mechanical breakdown
b) latent defect
c) defect, weakness, inadequacy, fault or unsoundness in:
   1) design, specifications, workmanship, construction:
   2) materials used in construction or repair;
   3) or maintenance;

of any Propulsion Machinery.

However, we do insure for any resulting loss caused by items a – c unless the resulting loss is itself is excluded from coverage. All other terms and conditions still apply.

Dated: 11/20/2007

Maritime General Agency

Endorsement Form: W-5

This Endorsement #: 6                    Effective: 10/25/2007
Attached To And Forming Part Of Policy#: YM 5839322
Of The: New Hampshire Insurance Co.
Issued To: Green Dragon Trading Company c/o

# MACHINERY ENDORSEMENT

It is hereby understood and agreed that all Propulsion machinery, engines and auxiliary equipment aboard the vessel shall be covered on the basis of it's actual cash value at the time of loss.

At no time shall payment for loss exceed more than the actual cash value of the machinery.

All other terms and conditions remain unchanged.

Dated:11/20/2007

_____
Maritime General Agency

Endorsement Form: W-1

This Endorsement #: 7                    Effective: 10/25/2007

Attached To And Forming Part Of Policy #: YM 5839322

Of The: New Hampshire Insurance Co.

Issued To: Green Dragon Trading Company c/o

## TERRORISM EXCLUSION ENDORSEMENT

This policy excludes any loss, damage, liability or expense arising from:

a)    terrorism; and/or

b)    steps taken to prevent, suppress, control or reduce the consequences of any actual, attempted, anticipated, threatened, suspected or perceived terrorism.

For the purpose of this clause, "terrorism" means any act(s) of any person(s) or organization(s) involving:

(i)    the causing, occasioning or threatening of harm of whatever nature and by whatever means;

(ii)    putting the public or any section of the public in fear,

(iii)    in circumstances in which it is reasonable to conclude that the purpose(s) of the person(s) or organization(s) concerned are of a political, religious and/or ideological nature.

All other terms, conditions, limitations and exclusions remain unchanged.

Dated: 11/20/2007

_Chrtphr L. Poce_

Maritime General Agency

Endorsement Form: MAN-3

This Endorsement #: 8                    Effective: 10/25/2007

Attached To And Forming Part Of Policy #: YM 5839322

Of The: New Hampshire Insurance Co.

Issued To: Green Dragon Trading Company c/o

## INSTITUTE EXTENDED RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE November 1, 2002

This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.

1.   In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to by or arising from:

    1.1   ionizing radiation's from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

    1.2   the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

    1.3   any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter

    1.4   the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes.

## INSTITUTE EXTENDED RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE - U.S.A. ENDORSEMENT  (Amended)

This insurance is subject to the Institute Extended Radioactive Contamination Exclusion Clause November 1, 2002 provided that

if fire is an insured peril

and

where the subject matter insured or, in the case of a reinsurance, the subject matter insured by the original insurance, is within the U.S.A., its islands, onshore territories or possessions

and

a fire arises directly or indirectly from one or more of the causes detailed in Sub-Clauses 1.1, 1.2 and 1.4 of the Institute Extended Radioactive Contamination Exclusion Clause November 1, 2002.

any loss or damage arising directly from that fire shall, subject to the provisions of this Reinsurance, be covered, EXCLUDING however any loss damage liability or expense caused by nuclear reaction nuclear radiation or radioactive contamination arising directly or indirectly from that fire.

All other terms, conditions, limitations and exclusions remain unchanged.

Dated: 11/20/2007

Maritime General Agency

Endorsement Form: MAN-I

This Endorsement #: 9                        Effective: 10/25/2007

Attached To And Forming Part Of Policy #: YM 5839322

Of The: New Hampshire Insurance Co.

Issued To: Green Dragon Trading Company c/o

## CHEMICAL, BIOLOGICAL, BIO-CHEMICAL, ELECTROMAGNETIC EXCLUSION CLAUSE (March 1, 2003)

**This clause shall be paramount and shall override anything contained in this insurance inconsistent herewith.**

In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to or arising from an actual or threatened act involving a chemical, biological, bio-chemical or electromagnetic weapon, device, agent or material when used in an intentionally hostile manner.

Dated: 11/20/2007

Maritime General Agency

Endorsement Form: MAN-2

This Endorsement #: 10                    Effective: 10/25/2007

Attached To And Forming Part Of Policy #: YM 5839322

Of The: New Hampshire Insurance Co.

Issued To: Green Dragon Trading Company c/o

### POLICY JACKET REFERENCE

The policy form referenced on your declarations page, BJP 2191-A (8/06), is deleted in its entirety and replaced by policy form 95613 (9/07).

All other terms and conditions remain unchanged.

Dated: 11/20/2007

_____
Maritime General Agency

Endorsement Form: MAN-6

## POLICYHOLDER NOTICE

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG).   The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aigproducercompensation.com or by calling AIG at 1-800-706-3102.

# PRIVACY POLICY

**Our Commitment to Privacy:**

The AIG Companies (AIG) believe one of our most important assets is the trust consumers place in us to respect and properly handle nonpublic personal information received by us in connection with providing our products and services. To continue earning your trust and enhance the products and services offered to you, the companies listed below have adopted the following privacy policy to govern how we treat your nonpublic personal information including such information about our former customers.

It's important for you to know that this privacy policy applies only to the product or service you have just obtained or the insurance policy under which you are seeking or receiving benefits. As a worldwide leader in the delivery of financial products and services, we offer numerous products and services to many types of consumers and clients in different states and countries around the world. Therefore, the same company may have more than one privacy policy, each tailored to fit specific products and services.

**Information We Collect:**

We collect information about you that is necessary to tailor our products and services to meet your individual needs, provide effective customer service, and comply with legal requirements.

We may collect nonpublic personal information about you, from one or more of the following sources:
- Information we receive from you on applications or other forms;
- Information about your transactions with us, our affiliates or others;
- Information we receive from a consumer-reporting agency; and
- Information received in handling claims.

**Sharing Information Within Our Family of Companies:**

We may share some or all of the nonpublic personal information we collect with our affiliates—the members of the AIG family of companies (this includes any of the AIG Companies, not just the ones listed at the end of this document), unless such sharing of information is prohibited by law. In many cases, the information that is shared may be at your request or is necessary to administer, process or otherwise handle your transactions with us or settle a claim on your behalf. In addition, we may provide this information to our affiliates in order to offer you products and services in which you may be interested.

Our family of companies includes many insurance companies (e.g., auto, home, and life insurance), insurance claims handling companies, other financial institutions (e.g., savings bank), and non-financial institutions.

**Sharing Information Outside the AIG Family:**

Sometimes, we use companies or businesses outside the AIG family to administer, process, or otherwise handle your transactions with us, such as for claims handling or customer service. Other times, we may enter into contracts with nonaffiliated companies to perform services on our

behalf, such as marketing our products and services, or we may enter into joint marketing agreements with other financial institutions. In these and other circumstances permitted by law, we may share some or all of the information we collect above with these nonaffiliated third parties. However, whenever we utilize a nonaffiliated third party to provide these services, they are required to follow federal privacy laws governing this notice. We also may share information to combat fraud, in response to a court order, or at the request of government regulators.

**Nonpublic Personal Health Information:**

We will not disclose nonpublic personal health information about you without obtaining prior written authorization from you, except as permitted by applicable law or regulation.

**Protecting and Safeguarding Your Information:**

To help prevent unwarranted disclosure of your nonpublic information and secure it from theft, we utilize secure computer networks and restrict access to nonpublic personal information about you to those employees who need to know that information to provide products or services to you. In addition, we maintain physical, electronic, and procedural safeguards that comply with applicable laws and regulations to guard our customers' nonpublic personal information.

**Maintaining Accurate Information:**

We also maintain procedures to ensure that the information we collect is accurate, up-to-date, and as complete as possible. If you believe the information we have about you in our records or files is incomplete or inaccurate, you may request that we make additions or corrections, or if it is feasible, that we delete this information from our files. You may make this request in writing to (include your name, address and policy number):

Chief Privacy Officer
AIG - Domestic Brokerage Group
175 Water Street, 3rd Floor
New York, NY 10038

FAX: 212-785-9495

e-mail: DBG.Privacy@AIG.com

*Special notice for customers who reside in any of the following states: Arizona, California, Connecticut, Georgia, Illinois, Kansas, Maine, Massachusetts, Minnesota, Montana, Nevada, New Jersey, North Carolina, Ohio, Oregon, Virginia or Wisconsin: You can obtain access to any nonpublic personal information we have about you if you properly identify yourself and submit a written request to us at the address above describing the information you want to review (include your name, address and policy number). Once we have received your request, and if the information is reasonably locatable and retrievable, we will, within 30 business days, take the following actions:*

- *Inform you of the nature and substance of the recorded information;*
- *Allow you to see and copy, in person, such recorded personal information; or*

- *Send you a copy of the recorded personal information by mail (we may charge you a reasonable fee to cover the cost of this service).*

*We will also tell you at this time the identity, if recorded, of persons to whom we have disclosed the nonpublic personal information within the preceding two years.*

*If you ask us to correct, amend or delete any information about you, we will, within 30 business days, either correct, amend or delete the nonpublic personal information in dispute or notify you of our refusal to take such action along with the reasons for our decision. If we make the correction, amendment or deletion you've requested, we will also notify you along with any person you designate who has received the information about you within the preceding two years, together with any insurance support organization(s) which provided us with the disputed information.*

*If we refuse to make the requested correction, amendment or deletion, you are permitted to file a concise statement setting forth what you think is the correct, relevant or fair information along with a statement of the reasons why you disagree with our refusal to correct, amend or delete the information subject to dispute. We will file your statement with the disputed personal information and make any person who reviews your file aware of your statement. We will also furnish your statement to any person who has received personal information from us within the two preceding years and any insurance support organization whose primary source of personal information is an insurer.*

**Important Information Concerning the Applicability and Future Changes to this Privacy Policy:**

This privacy policy applies, with respect to nonpublic personal financial information, to the particular products or services you have just obtained, which are primarily for personal, family, or household purposes in the United States by the AIG Companies listed below, and it applies to all nonpublic personal health information these Companies may have.  Although we may change this policy at any time, as it relates to the particular product or service, please rest assured that you will be notified of any changes as required by law.

**This Policy Is Used by the Following AIG Companies:**

AIG Hawaii Insurance Company, Inc.
AIG  Casualty Company
AIU Insurance Company
American Home Assurance Company
American International Pacific Insurance Company
American International South Insurance Company
Audubon Indemnity Company
Audubon Insurance Company
Commerce and Industry Insurance Company
Granite State Insurance Company
Illinois National Insurance Co.
National Union Fire Insurance Company of Louisiana
National Union Fire Insurance Company of Pittsburgh, Pa.

New Hampshire Insurance Company
The Insurance Company of the State of Pennsylvania
American International Specialty Lines Insurance Company
American Pacific Insurance Company, Inc.
Landmark Insurance Company
Lexington Insurance Company
Starr Excess Liability Insurance Company Ltd
Agency Management Corporation
A.I. Risk Specialists Insurance, Inc.
A.I. Risk Specialists of Missouri, Inc.
American International Entertainment, Inc.
Eastern Risk Specialists, Inc.
Florida Risk Specialists, Inc.
The Gulf Agency, Inc.
Louisiana Risk Specialists, Inc.
Medical Excess Insurance Services, Inc.
Michigan Risk Specialists, Inc.
Midwestern Risk Specialists, Inc.
Nevada Risk Specialists, Inc.
New England Risk Specialists, Inc.
Northwestern Risk Specialists, Inc.
Risk Specialists Companies, Inc.
Risk Specialists Company (Bermuda), Ltd.
Risk Specialists Company of Colorado, Inc.
Risk Specialists Company of Kentucky, Inc.
Risk Specialists Company of Minnesota, Inc.
Risk Specialists Company of New Jersey, Inc.
Risk Specialists Company of New York, Inc.
Risk Specialists Company of Ohio, Inc.
Risk Specialists Company of the Carolinas, Inc.
Southeastern Risk Specialists, Inc.
Southern Risk Specialists, Inc.
Western Risk Specialists, Inc.
American International Surplus Lines Agency, Inc.
AIG Warranty Services and Insurance Agency, Inc.

and other member companies of the AIG family who sent you this privacy policy statement.

# NEW HAMPSHIRE
# INSURANCE COMPANY©

# EXECUTIVE YACHT POLICY

ADMINISTRATIVE OFFICES: 70 PINE STREET, NEW YORK, N.Y. 10270

Insurance from The New Hampshire Insurance Company and other Member companies of The New Hampshire Insurance Group   AIG   Member Companies of American International Group, Inc.

95613 (9/07)

This **policy** provides different coverages. Unless otherwise stated, the terms, definitions, and exclusions of this **policy** shall apply to all coverages. Any term, definition, or exclusion under a specific coverage shall pertain only to that coverage unless otherwise stated. Please read the entire **policy** to determine **your** rights, duties, and what is and what is not covered.

Words and phrases that appear in boldface are defined in the DEFINITIONS section and shall apply to all coverages unless otherwise stated.

In consideration of the premium paid and in reliance upon **your** statements to **us**, **we** agree to provide to **you** the insurance described in this **policy**.

## DEFINITIONS

1.  **Actual Cash Value** means the price a willing seller would accept and a willing buyer would pay for **personal effects** with due allowance for depreciation at the time and place of physical loss or damage.

2.  **Agreed Hull Value** means the value agreed to by **you** and by **us** on **your** insured **yacht** as shown on the **declarations**.

3.  **Boating Equipment** means masts, spars, sails, and outboard motors. Boating equipment shall not mean **personal effects**.

4.  **Bodily injury** means bodily harm, sickness, or disease, including death resulting there from.

5.  **Captain** means any person employed by **you** or on **your** behalf as a **crew member** to be in charge of the shipboard management and navigation of the **yacht** for which **we** have agreed to provide coverage and who is employed by **you** at the time of a covered **occurrence**.

6.  **Crew Member** means any person employed by **you** or on **your** behalf to work aboard **your yacht,** up to the maximum number of employees as agreed to by **us**, and who is acting in the capacity of an employee in service of **your yacht** at the time of a covered **occurrence**, either as a paid **captain** or paid **crew member**.

7.  **Claim(s)** means a demand for money.

8.  **Damages** means those sums that are paid or are payable to satisfy a **claim** or **suit**.

9.  **Declarations** means the most recent **declarations** **we** issued to **you** under the **policy**, including any subsequent amendments and/or endorsements.

10. **Electronics** means any permanently installed electronics and related equipment used for the navigation and guidance of **your yacht**. Electronics does not include electronic engine management systems.

11. **Fine Arts** means paintings, etchings, statuary, antiques, collectibles and other bona fide works or art, historical value or artistic merit while on board **your yacht** and loading and unloading aboard **your yacht** while **your yacht** is at dock or mooring. Jewelry, watches and furs are not included in the definition of **fine arts**.

12. **Fuel Spill** means, and is limited to, the unintentional discharge, leakage, or spillage of fuel, oil, or lubricant products customarily used in the operation of **your yacht**.

13. **Lay-up** means taking **your yacht** out of active service during the period shown in the **declarations**. **Your yacht** cannot be used for any boating activities or as living quarters during this **lay-up** period. **Lay-up** can include either storage on land or afloat.

14. **Marine Environmental Damage** means the physical damage or injury to, the alteration of, or destruction of, a marine habitat caused by the use, operation, or maintenance of **your yacht.**

15. **Navigational Limits** means the geographical territory described on the **Declarations** in which **your** **yacht** must be located at the time of any occurrence in order for this insurance to apply.

16. **Occurrence** means a loss or accident to which this insurance applies and which takes place within the **policy period**. Continuous or repeated exposure to substantially the same general conditions, unless specifically excluded, is considered to be one **occurrence**.

17. **Personal Effects** means personal belongings not excluded under this **policy** and not used in the operation of **your yacht**. **Personal effects may** include, but not limited to, sporting equipment, fishing equipment, and the property of guests or **crew members**.

18. **Personal Injury** means injury other than **bodily injury** arising out of one or more of the following offenses:

   A. False arrest, detention, or imprisonment;

   B. Malicious prosecution;

   C. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor;

   D. Oral or written publication of material that slanders or libels a person or organization, or disparages a person's or organization's goods, products, or services; or

E. Oral or written publication of material that violates a person's right of privacy.

19. **Policy** means this **policy**, including the **Declarations**, any schedules, endorsements, warranties, and attachments.

20. **Policy Period** means the period commencing on the effective date shown on the **declarations**. This period ends on the earlier of the expiration date or the effective date of cancellation of this **policy**. All physical loss, **occurrences**, liability, **property damage**, **bodily damage**, or towing and assistance charges must occur during the **policy period**. If **you** became an insured under this **policy** after the effective date, the **policy period** begins on the date **you** became an insured and ends on the earlier of the expiration date or the effective date of cancellation of this **policy**.

21. **Pollutants** means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum products and derivatives, and waste. Waste includes, but is not limited to, material to be recycled, reconditioned, or reclaimed.

22. **Property Damage** means:

A. Physical injury to, or destruction of, tangible property including the loss of use of it; or

B. Loss of use of tangible property, which has not been physically injured or destroyed.

23. **Suit** means a civil proceeding in which damages because of **bodily injury** or **property damage** are alleged, including an arbitration proceeding or any other alternative dispute resolution proceeding.

24. **Temporary Substitute Yacht** means a vessel of equal or similar value, configuration, length and beam of **your yacht**.

25. **Tender** means a vessel, other than **your yacht**, that is carried on board **your yacht** and used in conjunction with **your yacht**.

26. **Trailer** means the insured vehicle shown on the **Declarations** which is used for the transportation of **your yacht** or **tender**.

27. **We**, **us**, or **our** means the Company issuing this **policy**.

28. **Yacht** means the insured vessel shown on the **Declarations** including, but not limited to, the following:

A. The vessel's sails or engine(s), machinery, furniture, and auxiliary fixtures;

B. Other vessel equipment and **electronics** on the vessel as is required aboard for its safety, maintenance, and operation; and

C. A personal watercraft **you** own or a dinghy **you** own and use solely in connection with **your yacht**, or any **tender** shown on the **Declarations**.

29. **You** and **your** means:

A. The person or organization named as the insured on the enclosed **Declarations**;

B. Members of the immediate family of the insured who live in the same household;

C. Anyone else operating the insured vessel with the prior express permission of the named insured, as long as the actual use is within the scope of such permission and for private pleasure use only; or

D. A **captain** or **crew member** who works on **your yacht**. **You** and **your** does not include, however, anyone operating or working for a marina, yacht club, boat repair yard, or similar business and who is not in **your** employ.

## GENERAL CONDITIONS AND EXCLUSIONS

### 1. GENERAL CONDITIONS

A. INSURING AGREEMENT

This **policy** is a legal contract between **you** and **us**. **We** agree to provide the insurance coverage described in this **policy** in return for **your** payment of the premium when due and compliance by **you** with all the terms and conditions of this **policy**.

B. TRANSFER OF INTEREST: This **policy** shall be void if **your yacht** is sold, assigned, transferred, or pledged without **our** prior written permission.

C. HELD COVERED: If the **navigational limits** or the **lay-up** warranty of this **policy**, as stated on the **Declarations**, are breached due to circumstances beyond **your** control, this **policy** shall remain in effect provided written notice is given to **us** as soon as the facts regarding the breach are known to **you** and any additional applicable premium is promptly paid.

D. WHAT **YOU** MUST DO IN THE EVENT OF A LOSS: If **you** have a loss or **claim** that **you** think might be covered under this **policy**, **you** must do the following:

(1) Notify the proper authorities in the event of a suspected criminal or illegal activity.

(2) Notify **your** agent or **us** in writing immediately. **You** must also provide **us** with all available information about the **occurrence** and arrange with **us** to survey and inspect the damage to **your yacht** prior to the start of repairs. **We** will give **you** instructions on where to have repairs performed.

(3) If a **claim** is made or **suit** is brought against **you**, **you** must immediately notify **us** and forward to **us** every demand, notice, summons, or other process received by **you** or **your** representative.

(4) If **your yacht** or other property covered by this **policy** is damaged, **you** must take all lawful and

reasonable steps to protect **your yacht** or other property from further damage. **We** will reimburse **you** for the reasonable expenses of protecting the property, not including **your** personal labor. These payments for protecting the damaged property shall be made in addition to any other payments **we** make for losses covered by this **policy**.

(5) After a loss, **you** may not abandon or assign **your yacht** to **us** or to any other party without **our** prior written permission.

E. WHEN **WE** SHALL PAY FOR LOSSES: **We** shall pay for losses covered under this **policy** within thirty (30) days after **we** receive proof of loss or other requested documentation that is satisfactory to **us**.

F. COOPERATION WITH **US**: In the event of a loss covered by this **policy**, **you** must cooperate with **us** fully. **You** shall not assume any obligations, admit any responsibility, or make any settlements or payments without first securing **our** written permission. **You** shall provide a sworn statement if **we** so request. If **you** are sued and **you** receive **our** written approval to defend the lawsuit, **we** shall pay defense costs. Payments for the cost of **your** legal defense shall be in addition to payments **we** make under this **policy** for watercraft liability insurance. If **we** pay for **your** defense, **we** shall have the right to select the attorney who will defend **you**. **We** have the right to control the defense, as well as the right to settle a **claim** or **suit** at **our** discretion.

G. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO **US**: If **you** have rights to recover all or part of any payment **we** have made under this **policy**, those rights are transferred to **us**. **You** shall do nothing to impair them. At **our** request, **you** shall bring **suit** or transfer those rights to **us** and help **us** enforce them.

H. OTHER INSURANCE: **We** shall be excess over any other insurance including, but not limited to, any self-insurance. If there is other insurance that applies to the physical loss, **occurrence**, liability, **property damage**, **bodily injury**, and towing and assistance charge, then this **policy** shall be excess over any other collectible insurance. This **policy** applies to the amount of loss that is more than:

(1) The Limit of Liability of the other insurance; and

(2) The total of all deductibles and self-insured amounts under all such other insurance.

In any event, **we** shall not pay more than **our** Limit of Liability.

I. LEGAL ACTION AGAINST **US**: If **you** are found liable as a result of an **occurrence** covered by this **policy**, **we** shall pay up to the Limit of Liability of this **policy** as shown on the **declarations**. **We** shall pay if **you** are bankrupt or insolvent. No one may begin legal action against **us** unless all the terms of the **policy** have been met, nor until thirty (30) days after the required proofs of **claim** have been filed with **us**.

J. CONCEALMENT OR MISREPRESENTATION

Any relevant coverage(s) shall be voided if **you** intentionally conceal or misrepresent any material fact or circumstance relating to this insurance, or **your** insurance application, whether before or after a loss.

K. CANCELING THE POLICY: **You** may cancel this **policy** by returning it to **our** authorized agent or by advising **us** or **our** authorized agent in writing of the future date **you** want this **policy** to be canceled. **We** can cancel this **policy** by providing written notice to **you** at the address shown in this **policy** or the insured's last known address. If this is done, the cancellation shall not be effective until ten (10) days after the date of mailing or such time as may be required by applicable state law. The mailing of this notice shall be sufficient proof of the notice to cancel.

L. RETURN PREMIUM: If this **policy** is canceled, **you** may be entitled to a premium refund. If **you** request cancellation, the return premium shall be computed on a short rate basis. If **we** cancel, the return premium shall be computed on a pro-rata basis. If **we** pay for a constructive total loss or total loss of **your yacht**, the full premium for the **policy** shall be considered fully earned and **you** shall receive no return premium.

M. **CAPTAIN**: **You** must employ a full time, paid **captain** for **your yacht**. It is warranted that during all navigation and operation of **your yacht** the full time, paid **captain** must be aboard and in charge of **your yacht**. **You** must provide **us** with **your** captain's written resume. If there is no **captain** or **you** change **captains** at any time during the **policy period**, **you** are required to give reasonable notice to **us**. If **you** fail to give such notice to **us**, **you** will have no coverage under this policy during the period of time when **your yacht** was navigated without a **captain**.

This condition shall not apply if **we** have provided **you** permission to navigate without a **captain** as indicated on the **Declarations** or by endorsement.

N. MATERIAL CHANGES TO **YOUR YACHT**: If **you** alter **your yacht** in any manner that affects the length, speed, or stability of **your yacht**, then **you** must provide **us** with written notice of such alteration within thirty (30) days after the completion of such alteration. If **you** refit or perform yard repairs to **your yacht**, **you** must provide **us** with written notice within thirty (30) days after the commencement of such refit or repair.

Failure to provide timely notice in accordance with the above provisions will result in a gap in coverage from the deadline for such notice until the actual receipt of such notice by **us**. **We** reserve the right to charge an additional premium for any change in the risk.

## 2. GENERAL EXCLUSIONS

A. RESTRICTIONS ON THE USE OF **YOUR YACHT**: **We** shall not cover losses that occur directly or indirectly,

in whole or in part, while **your Yacht** is being used in any way that is prohibited by this **policy**, including, but not limited to the following:

(1) While **your yacht** is being used for other than private pleasure purposes. **Your yacht** cannot be chartered unless approved by **us** in advance in writing, and such charter use is limited to private pleasure purposes only. **Your yacht** cannot be chartered, leased, or used for any commercial purposes at any time. Entertaining business clients on **your yacht** or tournament fishing on **your yacht** is not considered charter or commercial use.

(2) **Your yacht** cannot be taken beyond the **navigation limits** described on the **declarations** without prior written permission by **us**.

(3) **Your yacht** cannot be used for any illegal purpose including, but not limited to, the transportation of any illegal substance; and

(4) Use of **your yacht** during the **lay-up** period shown on the **declarations**.

(5) Use of **your yacht** for any race or speed contest. This exclusion shall not apply to predicted log type events or a race or speed contest with **your** sailboat.

**B. SEIZURE OR REQUISITION: We** shall not cover any loss, **claim**, or defense arising out of any lawful or unlawful capture, seizure, requisition, search, or detainment of **your yacht** by a civil or governmental authority, or any attempt by any of the aforementioned. **You** are covered, however, for direct physical loss during a Coast Guard or U.S. Customs boarding, provided there is no evidence of any wrongdoing by **you** or in an attempt to mitigate or prevent an actual or potential pollution hazard arising out of physical damage or loss to **your yacht**.

**C. WAR: We** shall not cover any loss, **claim**, or defense arising out of any war, war-like hostilities, or war-like operations. This includes declared and undeclared wars, civil wars, revolutions, or any civil unrest.

**D. NUCLEAR: We** shall not cover any loss, **claim**, or defense arising out of any nuclear reaction radiation, or radioactive contamination, however caused. If, however, nuclear reaction or radiation, or radioactive contamination causes a fire, **we** shall cover the physical loss or damage to **your yacht** caused directly by the fire.

**E. POLLUTION: We** shall not cover any loss, **claim**, or defense arising out of:

(1) The actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of **pollutants**; or

(2) Any direction or request to test for, monitor, clean-up, remove, contain, treat, detoxify, or neutralize **pollutants** or in any way respond to or assess the effects of **pollutants**.

This exclusion, however, shall not apply to any fuel, oil, or lubricant products customarily used in the operation of **your yacht** for which coverage is provided under SECTION "H" - **FUEL SPILL LIABILITY**.

**F. EMPLOYEE BENEFITS LIABILITY: We** shall not cover any loss, claim or defense arising out of any act, error or omission as respects the provision of employee benefits of any kind by **you.**

## SECTION "A"- HULL INSURANCE

1. WHAT **WE** INSURE:

A. Physical Loss to **Your Yacht: We** shall pay for direct physical loss to **your yacht** arising out of all perils unless otherwise excluded herein.

B. Hidden Defect: **We** shall pay for indirect physical loss or **property damage** caused by any hidden defect in the machinery, the hull, or any other area of **your yacht**. In the event a mast failure is deemed to be caused by a hidden defect in the mast, the mast shall be considered one indivisible unit. **We** shall not, however, pay for the cost of replacing or repairing the defective part.

C. Equipment on Shore: **We** shall pay for direct physical loss to **your boating equipment, tenders,** personal watercraft and **personal effects**, if such property is:

(1) separated from **your yacht**, while **your yacht** is **laid up** on shore, or

(2) while **your boating equipment, tenders,** personal watercraft, or **personal effects,** is in temporary storage, or

(3) while in transit to and from **your yacht** to such temporary storage.

Coverage for theft will only apply if the items are stored within a locked premises, or locked vehicle, and there is visible evidence of forced entry.

The **agreed hull value** shall be decreased by any amount **we** pay for physical loss to **your boating equipment.**

D. Collision Liability: If an amount is not indicated on the **declarations** for Section "B" Protection and Indemnity, **we** shall pay those amounts for which **you** become legally liable for **property damage** to other watercraft if **your yacht**, while waterborne, collides with another watercraft. Payments under this coverage shall be in addition to the **agreed hull value**, but the total shall not exceed the **agreed hull value.**

**We** shall not, however, pay for the following under this coverage:

(1) **Bodily injury**;

(2) **Personal injury**; or

(3) The cost of removing wrecks or obstructions.

E.　Additional Living Expenses: **We** will pay up to $10,000 for any reasonable additional living expenses ashore **you** may incur in minimizing a covered loss and preventing further loss or damage to **your yacht**.

This coverage is in addition to the hull limit shown on the **Declarations**.

F.　Precautionary Measures: **We** will pay up to $5,000 for reasonable expenses incurred by **you** to move **your yacht** to a place of safety from harms way prior to potential covered loss and while the **yacht** is under threat of windstorm, tidal surge, tsunami or seismic sea wave, or fire at **your yacht's** berth, slip, mooring, or place of storage.

This coverage is included in and does not increase the hull limit shown on the **Declarations**.

G.　Charter and Loss of Charter Hire:

If **we** have agreed in writing and endorsed the **policy**, **we** will cover physical loss to **your yacht** while **your yacht** is being chartered, as long as **your yacht** is in the care, custody and control of the **captain** at all times.

**We** will pay up to $25,000 per occurrence if **you** could not fulfill **your** obligations under any written charter due to, or as a result of, a covered loss. **We** cover the loss of charter hire in the amount provided in the written charter agreements and calculated on a daily basis for a maximum of sixty (60) days for each occurrence.

This coverage is included in and does not increase the hull limit shown on the **Declarations**.

H.　Inspections: **We** will pay the reasonable expenses of inspecting **your yacht** after an accidental grounding.

This coverage is included in and does not increase the hull limit shown on the **Declarations**.

I.　Newly Acquired Yachts: **We** will cover any **yacht** used solely for private pleasure purposes, with a maximum design speed of fifty (50) mph that **you** acquire by purchase during the **policy period**. The most **we** will pay for **your** newly acquired **yacht** is the actual purchase price, but in no event will the hull and equipment limit exceed $1,000,000. **You** must report the Newly Acquired Yacht to **us** within thirty (30) days from the date of purchase.

Coverage under this clause will cease when one of the following occurs:

(1) the expiration of thirty (30) days from the date of purchase,

(2) the expiration of this **policy**, or

(3) **you** report the value of the newly acquired yacht to **us**.

J.　Temporary Substitute Yacht: If **your yacht** is out of commission due covered loss or damage and cannot be repaired and made available for **your** private pleasure use for at least ten (10) days from the date of the occurrence, **we** will pay up to $1,500 per day for a **Temporary Substitute Yacht** to charter for **your** private pleasure use for up to a maximum of seven (7) consecutive days. However, **we** will not provide this coverage when **your Temporary Substitute Yacht** is used for any purpose other than **your** private pleasure use.

This coverage is in addition to the hull limit shown on the **Declarations**.

K.　Overland Transportation: **We** will cover physical loss or damage to **your yacht** incurred during overland transport on **your** trailer within the continental United States. **We** will also cover incidental overland movement of **your yacht** in connection with hauling, launching, dry docking maintenance or repair at a marina or shipyard within a radius of ten (10) miles from the point of origin. No coverage will be afforded for any physical loss or damage to **your yacht** incurred during overland transport due to scratching, marring, and/or denting.

L.　Search and Rescue: If a person is lost overboard from **your yacht**, **we** will pay up to $25,000, or the limit shown on the **Declarations**, or by endorsement hereto, for any search and rescue expense **you** may incur or be assessed by a governmental authority for such rescue or recovery effort.

This coverage is in addition to the hull limit shown on the **Declarations**.

2.　LIMIT OF INSURANCE: All coverages under this **policy** shall cease upon payment for losses which total the **agreed hull value** unless **your policy** is reinstated in writing by **us**.

If **we** pay the **agreed hull value** of **your yacht**, the full annual premium for this **policy** shall be considered fully earned and **you** shall receive no return premium.

3.　VALUATION:

A.　The value of **your yacht** is shown on the **Declarations** as the **agreed hull value**. In the event of damage to **your yacht**, **we** shall pay for the cost of repairs with material of like kind and quality without a deduction for depreciation.

B.　Covered losses to sails, protective covers, carpeting, upholstery, cushions, fabrics, outboard motors, and outdrives over three (3) years old shall be paid on the basis of their **actual cash value** adjusted for depreciation.

4. CONSTRUCTIVE TOTAL LOSS OR TOTAL LOSS: **We** shall pay the **agreed hull value** without a deductible if:

  A. **Your yacht** is a total loss;

  B. **Your yacht** is destroyed; or

  C. The reasonable expense of recovering and repairing **your yacht** exceeds the **agreed hull value**.

5. TOTAL LOSS TO **TENDER:**

  A. In the event of a total loss to **your tender, we** shall pay in addition to the **agreed hull value** the fair market value of the **tender** at the time of the loss.

  B. **You** must, however, provide satisfactory proof of loss and satisfactory proof of ownership of the **tender.**

6. DEDUCTIBLE:

  A. Hull Deductible: **We** shall subtract the deductible amount stated on the **declarations** from any payment **we** make for a loss covered under this section other than for a total loss or constructive total loss to **your yacht.**

  B. Electronics Deductible: A loss to **electronics** aboard **your yacht** is subject to a $500 deductible per **occurrence**. No loss shall exceed the Limits of Liability stated on the **declarations**. If a single accident or **occurrence** gives rise to a claim where both the insured hull and **electronics** are damaged, the $500 **electronics** deductible shall be applied solely to the **electronics** claim if the cost of repairs to the hull do not exceed the hull deductible. If the damage to the hull is greater than the amount of the hull deductible, then the hull deductible shall apply to the total amount of loss or damage to **your yacht** and **electronics.**

  As respects this deductible clause, **electronics** does not include electronic engine management systems.

7. REPAIRS: If the hull of **your yacht** or **tender** as shown on the **Declarations** is made in whole or in part of plywood, plastic, fiberglass, metal, or other molded materials, **we** shall, at **our** option, pay for the reasonable cost of applying suitable patches, refinishing work, or bottom paint to the damaged area in accordance with standard repair practices.

8. UNREPAIRED DAMAGE: If the damage to **your yacht** is not repaired or replaced:

  A. **We** shall pay the actual cash value of the damaged parts, not exceeding the cost to repair or replace with material of like kind and quality; and

  B. **We** shall not pay for un-repaired damage in addition to a payment for a subsequent total loss or constructive total loss of **your yacht.**

  **We** shall not be liable for previously un-repaired damage.

9. SALVAGE:

  A. When **we** pay the **agreed hull value** for a loss, the rights to all salvage shall be **ours.**

  B. All salvage charges shall be limited to an amount not to exceed the **agreed hull value.**

10. CAUSES OF LOSS THAT ARE NOT COVERED:

  A. **We** shall not cover any loss of, or damage to:

    (1) Wages of the **captain** and **crew members;**

    (2) Food, fuel, or other consumables.

  B. **We** shall not cover any loss or damage arising out of:

    (1) Intentional Acts: Any intentional misuse or misconduct, criminal, willful or malicious act or lack of reasonable care or due diligence, in the operation or maintenance of **your yacht, tender** or **trailer;**

    (2) Any wear and tear, gradual deterioration, weathering, inherent vice, insects, animals, vermin, fungus or mold, marine life, electrolytic or galvanic action, oxidation, warping or shrinkage, corrosion, dampness of atmosphere, gel coat or fiberglass blistering, wet or dry rot, or extremes of temperature;

    (3) Any theft or the unexplained disappearance of covered property from **your yacht**, unless:

      a. There is physical evidence of forcible entry or removal of the covered property;

      b. Corroboratory evidence, satisfactory to **us**, exists; or

      c. **Your yacht** is stolen;

    (4) The weight of **your yacht**, if the weight exceeds the rated capacity of **your trailer** or other land conveyance vehicle;

    (5) Any willful misconduct, criminal, or dishonest act by an insured, **your** employees, or any person to whom **you** entrust **your yacht;**

    (6) Failure to properly winterize **your yacht;**

    (7) The loading, unloading, or transportation of **your yacht** aboard a cargo vessel.

## SECTION "B" - PROTECTION & INDEMNITY

1. WHAT **WE** INSURE: **We** shall pay those amounts **you** legally must pay as **damages** for an **occurrence** which results from the ownership, maintenance, use, or operation of **your yacht** resulting in any of the following:

  A. **Bodily injury;**

  B. **Property damage;**

  C. **Your** liability to paid **captain** and **crew members** as defined in Admiralty Law;

  D. The actual or attempted raising, removal, or destruction of the wreck of **your yacht**;

  E. The failure to raise, remove, or destroy the wreck of **your yacht**; or

  F. The rescue of **you**, **your** passengers, or **your crew members.**

2. **MARINE ENVIRONMENTAL DAMAGE: We** will pay up to $250,000 for **damages you** are legally obligated to pay for **marine environmental damage. We** will also pay up to $50,000 for Government Fines or Penalties assessed against **you** by any Government or regulatory authority incurred as the result of any one **occurrence** of **environmental damage you** are legally obligated to pay.

This coverage is included in and does not increase the limit for Protection and Indemnity as shown on the **Declarations.**

3. COVERAGE FOR VESSELS **YOU** DO NOT OWN: **We** shall pay **bodily injury** and **property damage** arising out of **your** permissive use of a private pleasure vessel which **you** do not own or rent.

4. FEDERAL LONGSHOREMEN'S AND HARBOR WORKERS' COMPENSATION: **We** shall pay the amount for which **you** are liable if a **claim** is made against **you** for **bodily injury** resulting from the ownership, maintenance, or use of **your yacht**, and for which **you** are liable under the provisions of the Longshoremen's and Harbor Workers' Compensation Act. **We** shall, as required by the Act, conform to all the provisions of this Act, being Public Act No. 803 of the 69th Congress, approved March 4, 1927; all laws which amend or supplement this Act, and all lawful rules, regulations, orders, and decisions of the United States Department of Labor, Bureau of Employees' Compensation, and the Deputy Commissioner having jurisdiction, which affect this Act while this **policy** is in force. **We** shall carry out the provisions of Section 35 of this Act, and **we** shall not be relieved of **our** obligations due to **your** insolvency or bankruptcy.

5. LIMIT OF LIABILITY: The Protection and Indemnity Limit shown on the **declarations** is the most **we** shall pay under this coverage part. This is the most **we** will pay, regardless of the number of injured persons, **claims** made, or watercraft involved in any one **occurrence** or series of **occurrences** arising out of the same events.

6. LEGAL REPRESENTATION: **We** shall pay the costs related to the following, which are in addition to the Limit of Liability:

  A. **We** have the right and duty to defend at **our** expense any **suit** brought against **you** under this coverage part even if the **suit** is groundless or fraudulent. **We** shall not be obligated to make any payment nor undertake or continue the defense of any **suit** or proceeding after **our** applicable Limit of Liability has been exhausted by payment of judgments, settlements, and/or awards.

  B. **We** have the right to investigate any **claim** or **suit** and settle any **claim** or **suit** that **we** believe is proper. **Our** duty to defend any **suit** against **you** ends if **you** refuse to consent to a settlement **we** recommend and the claimant accepts. **You** shall then defend the **suit** at **your** own expense and negotiate any settlement. **Our** obligation to pay any settlement or judgment shall not be more than the amount for which **we** could have settled had **you** consented.

7. THIS SECTION DOES NOT COVER:

  A. Any liability assumed by **you** under any contract or agreement without **our** prior written permission, except for any contract entered for the exclusive purpose of hauling, mooring, storing, or launching **your yacht**;

  B. **Bodily injury** or **property damage** to others while **your yacht** or tender as shown on the **declarations** is being transported on land;

  C. **Bodily injury** or **property damage** arising out of the use of the insured **yacht** while engaged in towing a person in or on a device designed for flight, such as parasailing or kite-skiing.

  D. **Bodily injury** or **property damage** to:

   (1) **You**;

   (2) A relative in **your** household; or

   (3) Any person for which **you** or a relative in **your** household are the legal guardian;

  E. Any willful misconduct, criminal, or dishonest act by an insured, **your** employees, or person to whom **you** entrust **your yacht**;

  F. Punitive, exemplary, multiplied **damages,** or bail;

  G. Any loss involving an uninsured vessel which is owned, operated, or maintained by a local, state, or federal governmental agency or foreign military; or

  H. Any vessel involved in an accident with **your yacht**, which is owned by **you** or furnished for **your** regular use.

## SECTION "C" - MEDICAL PAYMENTS

1. WHAT **WE** INSURE: **We** shall pay reasonable and necessary medical, surgical, ambulance, hospital, professional nursing, and funeral expenses for any person for **bodily injury** arising out of an **occurrence** while boarding, aboard or leaving **your yacht**. All expenses must incur within one year of the date of the **occurrence**.

2. LIMIT OF LIABILITY: The Limit of Liability shown for medical payments on the **declarations** is **our** maximum limit of liability under this section.

3. MEDICAL AND OTHER REPORTS; EXAMINATION: If requested by **us**, any person presenting a **claim** under this section must:

A. Furnish reasonably obtainable information pertaining to the **occurrence** and **bodily injury** and execute authorization to enable **us** to obtain medical reports and copies of records;

B. Submit to physical examination by physicians selected by **us** as often as **we** may reasonably require;

C. Provide a written, sworn proof of loss; and

D. Provide copies of any other insurance policies or other evidence of health coverage that may cover the **claim**.

4. THIS SECTION DOES NOT COVER: **We** shall not cover any medical payments arising out of:

A. **Bodily injury** to any person while **your yacht** is being used:

(1) To carry paying passengers without first obtaining **our** prior written permission or the proper regulatory licensing; or

(2) Any other reason other than private pleasure purposes without **our** prior written permission;

B. **Bodily injury** of:

(1) Anyone who is eligible for injury or death benefits under any Workers' Compensation or Longshoremen's and Harbor Workers' Compensation Laws; or

(2) Any employee of **yours**, other than a household employee, or anyone who is working on or aboard **your yacht**;

C. **Bodily injury** of any trespasser who is boarding, aboard, or leaving **your yacht**;

D. **Bodily injury** to others while **your yacht** or **tender** shown on the **declarations** is being transported on land;

E. **Bodily Injury** or **Property Damage** arising out of the use of the insured **yacht** while engaged in towing a person on or on a devise designed for flight, such as parasailing or kite-skiing.

F. Any liability assumed by **you** under any contract or agreement without **our** prior written permission.

## SECTION "D" - TRAILER COVERAGE

1. WHAT **WE** INSURE: **We** will pay for loss to **your trailer** arising out of all perils unless otherwise excluded herein.

2. VALUATION: **We** shall pay for repair or replacement for any covered loss on an actual cash value basis adjusted for any applicable depreciation. **Our** liability for any one loss shall not exceed $10,000 or the limit shown for **your trailer** on the **declarations**, whichever is greater.

3. DEDUCTIBLE: Each loss payment under this section shall be reduced by $500 or the deductible amount shown on the **declarations** if otherwise **scheduled**.

4. TERRITORAL LIMITS: Coverage for **your trailer** applies only to physical loss that occurs within the United States, District of Columbia, Puerto Rico, and the Provinces of Canada.

5. CAUSES OF LOSS THAT ARE NOT COVERED: Losses which are excluded under Section "A" – Hull Insurance of this **policy** are also excluded under this Section.

## SECTION "E" - TOWING AND ASSISTANCE CHARGES

1. WHAT **WE** INSURE: **We** shall pay reasonable costs **you** incur should **your yacht** become disabled while waterborne away from a safe harbor, and **you** are forced to seek commercial assistance because civil and/or voluntary help is not available.

**We** shall pay for:

A. Towing to the nearest place where necessary repairs can be made;

B. The cost of delivering gas, oil, parts, or loaned battery (but not the cost of the gas, oil, parts, or battery);

C. Labor for emergency repairs while away from safe harbor or docking/mooring berth; or

D. **Yacht trailer** roadside service.

2. LIMIT OF LIABILITY: The most **we** shall pay for towing and assistance charges is shown on the **declarations**, regardless of the number of **occurrences** requiring such towing assistance in any one **policy period**. No deductible shall apply to this coverage. Satisfactory proof of payment, however, shall be sent to **us** or **our** representative for reimbursement. **We** also reserve **our** right to request any other reasonable evidence regarding **your** disabled **yacht**.

If **your yacht** is towed as result of a covered loss under Section "A" – Hull Insurance, no amount shall be deducted under this Section.

## SECTION "F" - PERSONAL EFFECTS

1. WHAT WE INSURE: **We** shall cover physical loss to **your personal effects** arising out of all perils while boarding, aboard, or leaving **your yacht**, unless otherwise excluded herein.

2. FINE ARTS: **We** shall pay for a covered loss of **your fine arts** while on board, or while loading or unloading, **your yacht**. The amount **we** will pay for a covered loss is $25,000, and will be further limited by whether the item is itemized in a schedule, or unscheduled.

3. FIREARMS: **We** shall pay up to $2,500 per occurrence for the theft of firearms owned by **you** while on board, or while loading or unloading, **your** yacht.

A deductible of $250 will apply for this coverage.

4. CHINA AND SILVER: **We** shall pay up to $2,500 per occurrence for the theft of China or Silver while on board, or while loading or unloading, **your yacht** or **tender**.

A deductible of $500 will apply for this coverage.

5. COMPUTER HARDWARE: **We** shall pay up to $10,000 per occurrence for physical loss to computer hardware, fax machines or printers while on board **your yacht** or **tender**.

A deductible of $250 will apply for this coverage.

6. MOPEDS AND MOTORBIKES: **We** shall pay up to $10,000 per occurrence, per item for **your** mopeds or motorbikes, but only while on board **your yacht** and locked, or while being loaded or unloaded from **your yacht**.

This coverage increases the limit for personal effects shown on the **Declarations**. There is no deductible for this coverage.

7. VALUATION: **We** shall pay the **actual cash value** of the **personal effects** at the time of the covered loss. The most **we** shall pay in any one **occurrence** is the Limit of Liability shown on the **Declarations** for **personal effects** or the sub-limits as shown in Section F, regardless of the number of persons involved, property lost, or **claims** made.

As respects **fine arts** we shall pay:

(1) Scheduled Items:

　　(a) Total Loss – For a covered loss to an item listed in **your** Schedule of **Fine Arts**, **we** shall pay the total amount of coverage for that item if it is lost or damaged beyond repair.

　　(b) Partial Loss – If only part of the scheduled item is lost or damaged, **we** shall pay either the cost to restore the item to its condition

immediately before the loss or the difference between its market value before and after the loss. If after restoration, the market value of the item is less than its market value at the time of the loss, **we** shall also pay the difference. In no event shall the total of all payments exceed the amount of coverage shown on the Schedule of **Fine Arts** for that item.

(2) Unscheduled Items: **We** will pay the lesser of $5,000 or the amount required to restore the unscheduled item, or the market value of the unscheduled item, at the time of the loss. If the market value after restoration is less than the market value at the time of the loss, **we** shall pay the difference up to $5,000, but in no event shall the total amount **we** pay for restoration and loss of market value exceed $5,000 for any one unscheduled item.

(3) For a covered loss to a pair or set, **you** may elect to:

　　(a) Repair or replace any part to restore the pair or set to its market value prior to the loss;

　　(b) Be paid the difference between market value of the pair or set before and after the loss; or

　　(c) Be paid the scheduled amount of coverage shown on the Schedule of Fine Arts for the pair or set, or the market value of the entire pair or set immediately before the covered loss if unscheduled, when **you** surrender the pair or set to **us**.

　　(d) The most **we** shall pay for a pair or set is:

　　　　(i) the limit shown on the Schedule of Fine Arts for that pair or set, or;

　　　　(ii) $5,000 for any one unscheduled pair or set.

In no event shall the total **we** pay in any one occurrence exceed $25,000 for all **fine arts**.

8. EXCLUSIONS: **We** shall not cover any loss or damage which is excluded under Section A of this **policy**, nor shall **we** cover the following property:

　　A.　Currency or legal tender;

　　B.　Valuable papers, documents, or collectibles;

　　C.　Computer software;

　　D.　Jewelry;

　　E.　Furs;

　　F.　Photographic equipment;

　　G.　Liquor;

　　H.　Cellular phones; or

　　I.　Portable marine **electronics**.

95613 (9/07)

9.  DEDUCTIBLE: Unless otherwise stated each loss payment under this section shall be reduced by the deductible amount shown on the **declarations**

## SECTION "G" - UNINSURED BOATER LIABILITY

1. WHAT WE INSURE: **We** shall pay those amounts **you** are legally entitled to recover for **damages** from an uninsured owner or operator of a vessel due to **your bodily injury** arising out of an **occurrence** and results from the ownership, maintenance, use or operation of **your Yacht**.

2. CONDITION: To be entitled to coverage under this section, the following conditions shall apply:

A.  The owner or operator of the other vessel must be a person or vessel owner other than the named insured shown on the **declarations**;

B.  The owner or operator of the other vessel must be legally liable for causing or contributing to the **occurrence**; and

C.  The owner or operator of the other vessel:

(1) Must not have an applicable valid and collectible insurance; or

(2) Cannot be identified.

3. LIMIT OF LIABILITY: The amount shown for this section on the **declarations** is the most **we** shall pay for any Uninsured Boater Liability regardless of the number of insured or uninsured persons, **claims** made or vessels involved in any one or series of **occurrences** arising out of the same event. Payment under this section shall be reduced by any amounts paid to **you** by or on behalf of those uninsured persons legally responsible, any state or federal compensation law or provision as well as any amounts paid under any other section of this **policy**. In addition, any payment to **you** under this section shall reduce the amount of coverage available under any other section of this **policy**.

4. EXCLUSIONS: **We** shall not cover any **claim** arising out of:

A.  **Bodily injury** or **property damage** to others while **your yacht** or **tender**, as shown on the **declarations**, is being transported on land;

B.  Any **personal injury**;

C.  Any **property damage**;

D.  Any loss involving an uninsured vessel which is owned, operated or maintained by a local, state or federal governmental agency or foreign military;

E.  Any vessel involved in an accident with **your yacht**, which is owned by **you** or furnished for **your** regular use; or

F.  Any loss or damage excluded under any portion of this **policy**.

## SECTION "H" – FUEL SPILL LIABILITY

1. WHAT WE INSURE: **We** shall pay those amounts **you** are legally responsible to pay for the containment, clean-up, **property damage**, and assessments arising out of a **fuel spill occurrence** which results from the ownership, maintenance, use, or operation of **your yacht**.

2. LIMIT OF LIABILITY: The **Fuel Spill** Liability Limit shown on the **declarations** is the most **we** shall pay under this coverage part, regardless of the number of insureds, **claims** made, or watercraft involved in any one **occurrence** or series of **occurrences** arising out of the same events.

3. LEGAL REPRESENTATION: **We** shall pay the costs related to the following, which are in addition to the Limit of Liability:

A.  **We** have the right and duty to defend at **our** expense any **suit** brought against **you** under this coverage part even if the **suit** is groundless or fraudulent. **We** shall not be obligated to make any payment nor undertake or continue the defense of any **suit** or proceeding after **our** applicable limit of liability has been exhausted by payment of judgments, settlements, and awards.

B. **We** have the right to investigate any **claim** or **suit** and settle any **claim** or **suit** that **we** believe is proper. **Our** duty to defend any **suit** against **you** ends if **you** refuse to consent to a settlement **we** recommend and the claimant accepts. **You** shall then defend the **suit** at **your** own expense and negotiate any settlement. **Our** obligation to pay any settlement or judgment shall not be more than the amount for which **we** could have settled had **you** consented.

4. CONDITION: To be entitled to coverage under this section **you** must:

A.  Report the incident to the appropriate authorities; and

B.  Cooperate with and assist the authorities in any and all containment and clean-up activities.

5. EXCLUSIONS: **We** shall not cover any **claim** or defense arising out of:

A.  **Property damage** to others while **your yacht** or **tender** as shown on the **declarations** is being transported on land;

B.  **Property damage** to:

(1) **You**;

(2) A relative in **your** household; or

(3) Any person for which **you** or a relative in **your** household are the legal guardian;

C.  Any **personal injury**;

D.  Any **bodily injury**;

E.  Wages of the **captain** or **crew members**; or

F.   Punitive, exemplary, multiplied damages, or bail.