IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | | |
|---|---|---|---|
| NEW HAMPSHIRE INSURANCE COMPANY, | ) ) ) | | |
| Plaintiff, | ) ) ) | | |
| v. | ) ) | Case No.: | 08-CV-1326 |
| GREEN DRAGON TRADING COMPANY, c/o Dombrowski & Sorensen Attorneys at Law, | ) ) ) ) ) | Judge: | Der-Yeghiayan |
| Defendant. | ) | | |

**NEW HAMPSHIRE INSURANCE COMPANY'S RESPONSE IN OPPOSITION TO GREEN DRAGON TRADING COMPANY'S MOTION TO DISMISS FOR LACK OF VENUE OR, IN THE ALTERNATIVE, TO TRANSFER**

Plaintiff, New Hampshire Insurance Company ("New Hampshire"), by and through its attorneys Dennis Minichello and Stephanie Espinoza of Marwedel, Minichello & Reeb, P.C., and for its Response in Opposition to Green Dragon Trading Company's Motion to Dismiss For Lack of Venue Or, In the Alternative, to Transfer ("Motion to Dismiss or Transfer"), states as follows:

**INTRODUCTION**

Green Dragon Trading Company ("Green Dragon")'s Motion to Dismiss or Transfer should be denied. The Northern District of Illinois is the proper venue for this matter, and Green Dragon has failed to establish that this venue would be so inconvenient as to require a transfer to another jurisdiction.

**STATEMENT OF FACTS**

This lawsuit arises out of questions regarding insurance coverage under a marine policy of insurance on the M/Y LE VIPER, a motor yacht owned by Green Dragon. In October of 2007, Green Dragon, by and through its insurance agent, Mesirow Financial, contacted New Hampshire regarding the placement of a marine insurance policy for the M/Y LE VIPER. (Affidavit of Peter Arndt ("Arndt Affidavit"), attached hereto as Exhibit 1, ¶¶ 4-6.) Mesirow Financial is an Illinois corporation doing business in Chicago, Illinois. (*Id*. at ¶ 4.) Mesirow

1

Financial communicated with International Special Risks, Inc. ("ISR"), an independent wholesale broker. (*Id*. at ¶ 4.)  ISR, in turn, communicated with Maritime General Agency on behalf of New Hampshire, to procure insurance for the M/Y LE VIPER. (*Id*. at ¶ 6.)

The vessel is wholly owned by Green Dragon, a holding company.  Green Dragon is a bearer stock company, incorporated in the Isle of Mann. (Affidavit of Susan Smith ("Smith Affidavit"), attached hereto as Exhibit 2, ¶ 8.)  Its sole shareholder and director of the company's Western Hemisphere operations is Joseph Dombrowski, an attorney with Dombrowski & Sorensen, Attorneys at Law, located in Chicago, Illinois. (*Id*.)

As part of the insurance underwriting process, Mr. Dombrowski completed two insurance applications. (Arndt Affidavit, ¶¶ 8-9.)  The first application listed the address of Green Dragon as 670 N. Clark, Chicago, Illinois. (*Id.* at ¶ 8.)  The application further represented that Green Dragon existed for the sole purpose of ownership of the vessel. (*Id*.)  This application, as well as a second application further stated that the vessel would be berthed in Chicago area for the summer (June 1 to November 1), and in the Caribbean for the winter (November 2 to May 31).  Coverage was bound on October 25, 2007. (*Id.* at ¶¶ 8-9.)  During the underwriting process, it was also requested that Green Dragon verify that certain repairs had been made to the vessel, in order to establish that it was in good condition. (*Id.* at ¶ 10.)  Mr. Dombrowski prepared a letter of compliance indicating that the repair had been completed. (*Id*.)  The policy declaration page was delivered to Green Dragon's agent in Chicago and the policy was subsequently faxed to MR. Dombrowski in Chicago, Illinois. (*Id.* at ¶¶ 12-13.)

On or about November 18, 2007, the vessel was involved in an incident off the coast of Florida and took on water in its engine room.  Green Dragon made claim for the loss via a letter from Mr. Dombrowski from his law office in Chicago, Illinois to Mesirow Financial. (Smith Affidavit, ¶ 4.)  This letter and a Property Loss Notice were then forwarded to ISR, who forwarded the information to New Hampshire's claim-handling agent, AI Marine Adjusters, Inc., of the loss on November 20, 2008. (*Id*.)  While AI Marine investigated the loss, it had several written exchanges with Mr. Dombrowski, through his law office in Chicago, Illinois, as well as with his attorney. (*Id.* at ¶¶ 5-8.)  Enclosed with a letter from Mr. Dombrowski dated February 5, 2008 was a repair invoice from R&K Construction, Inc., located in Elk Grove, Illinois, which purported to reflect repairs made to the vessel in response to recommendations made by Green Dragon's marine surveyor. (*Id.* at ¶¶ 8-9.)

After Green Dragon made a claim for the damages to the vessel, New Hampshire timely reserved its rights under the Policy and, on March 3, 2008, denied coverage for this claim. (Complaint for Declaratory Judgment ("Complaint"), Docket No. 1, ¶¶ 17-18; Smith Affidavit, ¶ 10.)  On March 5, 2008, New Hampshire filed its suit for Declaratory Judgment, asserting that it has no duty to provide coverage for this loss based on two exclusions in the Policy. (Complaint, Counts I and II.)  Further, New Hampshire asserts that Green Dragon breached the warranty of seaworthiness. (*Id*., Count III.)  New Hampshire asserts that water was allowed to ingress the engine room of the M/Y LE VIPER due to the failure of two hose clamps which were corroded. (See Reservation of Rights and Denial of Coverage Letters, Exhibits B and C to Complaint.) New Hampshire asserts that the failure of Green Dragon to maintain and/or repair the vessel caused the loss, and that loss due to corrosion is specifically excluded under the Policy. (*Id*.)  In addition, New Hampshire alleges that Green Dragon breached its duty of seaworthiness based on the faulty condition of the vessel. (*Id*.)

On April 7, 2008, Green Dragon acknowledged waiver of service in this lawsuit by returning the executed Waiver of Service of Summons form. (See Return of Waiver of Service, Docket No. 16.)

On March 11, 2008, Green Dragon filed its own Complaint for Breach of Insurance Contract in the Circuit Court of the Seventeenth Judicial District in and for Broward County, Florida, asserting that it was entitled to coverage under the same insurance policy for this incident. (A copy of Green Dragon's Complaint is attached hereto as Exhibit 3.)  That action has been removed to the U.S. District Court for the Southern District of Florida, and New Hampshire has moved that it be stayed pending this Court's determination of the subject Motion to Dismiss or Transfer.  Counsel for Green Dragon in the Florida proceeding has indicated that Green Dragon does not have an objection to the stay.

## **ARGUMENT**

### I.     **VENUE IS PROPER IN THE NORTHERN DISTRICT OF ILLINOIS**

New Hampshire has properly filed this action in the venue in which Green Dragon's sole shareholder and director resides and does business, and where Green Dragon has asserted that it is located.  In addition, the Northern District of Illinois is where the transactions giving rise to the insurance policy that is at issue in this lawsuit occurred, through Green Dragon's insurance

3

broker. Therefore, venue is proper in this district and Green Dragon's motion to dismiss should be denied.

Green Dragon asserts that venue is not proper pursuant to 28 U.S.C. §1391(b). This is a cause of action pursuant to Rule 9(h) of the Federal Rules of Civil Procedure. Therefore, Section 1391 is not applicable to the determination of venue in this case. F.R.C.P. 82; *Fluor Corp., Ltd. v. S/S President Coolidge*, 52 F.R.D. 538, 539 (S.D.N.Y. 1971). Under general maritime law, venue is proper wherever a defendant may be served. *Fluor Corp.*, 52 F.R.D. at 539.

Green Dragon asserts that it does not reside in the Northern District of Illinois and that it has no actual presence here, but the facts do not support this assertion. Most importantly, Green Dragon has accepted service in this district via waiver of service, which was sent to Green Dragon at its address at 670 North Clark Street in Chicago. (See Docket No. 16.) On that document, Mr. Dombrowski identifies himself as the "agent" of Green Dragon. Further, the sole shareholder and director of the Western Division of Green Dragon is Joseph Dombrowski, who is a resident of Illinois and is the name partner in a law firm, Dombrowski & Sorensen, located at 670 North Clark Street in Chicago. (Smith Affidavit, ¶ 8.) Green Dragon has admitted that it entered into a contract of insurance with New Hampshire in Illinois. (Green Dragon Complaint, ¶ 5.) It is further admitted that Green Dragon receives mail from the insurer in Chicago. (Green Dragon's Memorandum in Support of Motion to Dismiss or Transfer, p. 2) Mr. Dombrowski applied for insurance coverage for the yacht through his insurance broker in Chicago. (Arndt Affidavit, ¶ 4.) As part of the underwriting process, Mr. Dombrowski prepared an insurance application in which it was represented that Green Dragon's address is 670 North Clark Street, in Chicago. (*Id.* at ¶ 8.) No other location was ever provided to New Hampshire or its agents for the location of Green Dragon. In addition, Mr. Dombrowski represented in the insurance application that Green Dragon was created for the sole purpose of ownership of the vessel. (*Id.*) Therefore, it is essentially a corporate shell designed to hide the fact that ownership of the vessel lies with Mr. Dombrowski.

In addition, Mr. Dombrowski has been the primary contact for purposes of providing information for the investigation of the claim. He provided the initial notice of loss, with a letter detailing the events. (Smith Affidavit, ¶ 4.) He received the Reservation of Rights and Denial of Claim letters regarding this loss. (*Id.* at ¶¶ 5, 10.) AI Marine communicated only with either Mr. Dombrowski or his attorney relating to the investigation. (*Id.* at ¶¶ 5-10.) Therefore, his

involvement in this matter is substantial and his location, which is also the location of Green Dragon, is a proper marker for venue.  Indeed, it is difficult to imagine how venue could *not* be proper in the Northern District of Illinois, where it is the district of the only stated address of Green Dragon and Mr. Dombrowski, as the only shareholder and representative of a company that exists in name only for the sole purpose of owning a vessel.

Even if Green Dragon were correct that venue should be determined pursuant to Section 1391, venue is still proper in the Northern District of Illinois under that analysis.  First, as explained above, the defendant resides in this district for purposes of Section 1391, as it is subject to personal jurisdiction here through its numerous contacts within this forum. *See* 28 U.S.C. 1391(c); *Alpha Tau Omega Fraternity v. Pure Country, Inc.*, 185 F.Supp.2d 951 (S.D.Ind. 2002).  Second, alien corporations are subject to venue in any district in which they can be found for service. 28 U.S.C. § 1391(d); *Naegler v. Nissan Motor Co., Ltd.*, 835 F.Supp. 1152, 1157, n. 5 (W.D.Mo. 1993).  Green Dragon accepted waiver of service in the Northern District of Illinois and has voluntarily appeared in this action.  Finally, a number of the substantial events leading up to this matter took place in the Northern District of Illinois, including the negotiation and delivery of the insurance policy, notice and investigation of the claim, and the fact that the vessel which is the subject of this matter spends a portion of each year located in this district. *See, e.g. Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38 (1st Dist. 2000)(noting that venue may be proper in any number of districts where the events underlying a claim took place in different locations.)

These factors all support the conclusion that venue is proper in the Northern District of Illinois and this matter should not be dismissed or transferred.  Therefore, this matter should not be dismissed for lack of proper venue.

    **II.    THE CASE SHOULD NOT BE TRANSFERRED TO THE SOUTHERN DISTRICT OF FLORIDA**

Green Dragon argues that even if venue is proper in the Northern District of Illinois (which it clearly is), this case should be transferred to the Southern District of Florida.  Green Dragon has failed to establish that the Southern District of Florida would be a more convenient forum and, therefore, its request for transfer should be denied.[1]  In order to succeed on a motion

---

[1] Green Dragon variously refers to *forum non conveniens*, 28 U.S.C. §1404(a) and 28 U.S.C. §1406 as bases for its argument in support of transfer.  The common law doctrine of *forum non conveniens* has been codified at 28 U.S.C.

to transfer pursuant to 28 U.S.C. §1404(a), the moving party must establish that the transferee court will be a "clearly more convenient" forum. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-220 (7th Cir. 1986); *American Cas. Co. of Reading, PA v. FILCO*, 2004 WL 2674309 (N.D.Ill. 2004). It is not sufficient that certain factors weigh in favor of transfer; the balance of all factors must clearly be in favor of the transferee court. "When plaintiff and defendant are in different states there is no choice of forum that will avoid imposing inconvenience; and when the inconvenience of the alternative venues is comparable there is no basis for a change of venue; the tie is awarded to the plaintiff,…." *In re National Presto Industries, Inc.*, 347 F.2d 662, 665 (7th Cir. 2003). In this case, Green Dragon has failed to satisfy its burden of proof that the transferee court will be "clearly more convenient" than the Northern District of Illinois, New Hampshire's chosen forum.

Assuming that venue is proper in both the transferor and transferee districts, the court must consider a number of factors in determining the propriety of transfer, including: "1) the choice of forum by plaintiff, 2) the convenience of the parties, 3) the convenience of the witnesses, and 4) the interest of justice." *FILCO*, 2004 WL at *2 (N.D.Ill. 2004) (internal citations omitted). Other courts have also noted "the site of material events" and "the availability of evidence in each forum" as necessary considerations. *Evangelical Lutheran Church in America v. Atlantic Mut. Ins. Co.*, 973 F. Supp. 820, 822 (N.D. Ill. 1997). The moving party has the burden of proof in establishing that the transferee district is "clearly more convenient." *FILCO*, 2004 WL at *2, *citing Coffee*, 796 F.2d at 220 n. 3. In this case, the balance of the factors clearly falls in favor of maintaining this action in the Northern District of Illinois.

### 1. Plaintiff's Choice of Forum

First, the plaintiff's choice of forum is given deference in determining whether to transfer venue. "…[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *In re National Presto*, 347 F.3d at 665, *citing Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). In *National Presto*, the court upheld the district court's decision not to transfer venue where the balance of the factors did not weigh heavily in favor of the moving party. While the main factor supporting venue in the Northern District of Illinois was

---

§1404(a) and is only applicable to determining whether a foreign jurisdiction would be more convenient. *Sinochem Inter. Co., Ltd. v. Malaysia Intern. Shipping Corp.*, 127 S.Ct. 1184, 1191 (2007). Further, venue is proper in this district and Section 1406 is, therefore, not applicable. Thus, New Hampshire provides its response in the context of Section 1404(a), the only potentially applicable provision.

6

the plaintiff SEC's regional office in Chicago, the court found this sufficient to retain the matter, despite noting that the balance of the factors likely weighed slightly in favor of transfer. *Id*.

Similarly, in this case, New Hampshire's choice of forum should not be disturbed. Not only was New Hampshire within its rights to bring suit in the Northern District of Illinois, it chose the forum where its insured and the insured's insurance broker reside – on its face a forum most convenient for Green Dragon. Therefore, this factor should weigh in favor of retaining jurisdiction in the Northern District of Illinois.

### 2.     Site of Material Events and Availability of Evidence

Green Dragon claims, as its primary argument in support of transfer, that the yacht became distressed in the waters off the coast of Florida and was aided by the local Coast Guard and a private towing company. It is true that the yacht become distressed in Florida, as explained above, but this is a lawsuit regarding interpretation of an insurance policy.

This issue was addressed in *Am. Steamship Owners Mut. Prot. & Ind. Assoc., Inc. v. Lafarge North America, Inc.*, 474 F.Supp.2d 474 (S.D.N.Y. 2007). In *Lafarge*, a barge that was moored at Lafarge's terminal in New Orleans during Hurricane Katrina broke away during the storm and allegedly allided with one of the levees that subsequently broke, flooding the city. *Id.* at 477. Numerous lawsuits relating to the barge breakaway resulted, and Lafarge's insurance company brought a declaratory judgment action, seeking a determination that it had no duty to defend or indemnify Ingram for the suits. *Id.* at 477-478. Ingram sought to have the matter transferred to the Eastern District of Louisiana, what it defined as the locus of operative facts, and where the barge owner had a limitation of liability action already pending. The court found that the important consideration in determining the locus of operative facts for an insurance coverage issue was "the site of 'the execution of the contract, not the location of the incident which triggered the insurance claim.'" *Id.* at 485, *citing Royal Ins. Co. of Am. v. Tower Records*, 2002 WL 31385815, *4 (S.D.N.Y. 2002)(finding locus of operative facts was where the policy was negotiated, purchased, and delivered). The court noted that the policy was negotiated and issued in the transferor jurisdiction, and subject to interpretation under that court's law, thus concluding that the locus of operative facts was New York and declining to transfer.

In this case, the fact that the yacht took on water off the coast of Florida is not relevant for purposes of the insurance coverage questions at issue in this dispute. Further, to the extent such events were to be focused on by Green Dragon, the facts regarding the yacht's mechanical

7

distress and the cause of the ingress of water into the vessel are largely known. The vessel has already been inspected, and it is unlikely that it will need to be inspected again. In addition, the component parts of the vessel that are relevant to the determination of whether the loss is covered have already been removed from the vessel and are within the possession of the metallurgist, who will be retained as an expert witness by New Hampshire and made available in this court. His findings and opinions were and will be relevant to a determination of coverage under the Policy, which is the issue before this Court. Therefore, although the vessel did become distressed off the coast of Florida, this factor should not weigh at all in the Court's determination regarding proper venue.

Likewise, the location of the evidence that will be used in this litigation does not weigh in favor of transfer to the Southern District of Florida. The bulk of the evidence will consist of the insurance policy and related documents exchanged during the underwriting process, including surveys relating to the vessel, as well as surveys prepared by each party's marine surveyors after the loss. These documents are not voluminous and are easily accessed in either jurisdiction. When documents are easily transferrable, this factor weighs in favor of neither party. *First Nat. Bank v. El Camino Resources, Ltd.*, 447 F.Supp.2d 902, 912 (N.D.Ill. 2006). Therefore, this factor does not weigh in favor of either district.

### 3.    Convenience of the Parties

Second, the convenience of the parties clearly favors retaining this case in the Northern District of Illinois. Suit has been brought where Green Dragon resides, according to the insurance application submitted by Mr. Dombrowski, Green Dragon's sole shareholder and director. (Smith Affidavit, ¶ 8.) Mr. Dombrowski is a resident of Chicago and maintains a law practice in Chicago, in which he is a name partner. (See letters attached to Arndt and Smith Affidavits.) Therefore, it is difficult to imagine a more convenient forum for the defendant. Mr. Dombrowski argues that he will make himself available in the Southern District of Florida; this type of concession almost suggests a type of forum shopping by Green Dragon, and should not be given any weight in this analysis. *See, e.g. Stock v. Integrated Health Plan, Inc.*, 2006 WL 3420289 (S.D.Ill. 2006)(agreeing that defendant was essentially forum shopping by arguing that case should be transferred to Florida, despite demanding that defendant owner be deposed in Boston).

In addition, the Northern District of Illinois is a more convenient forum for New Hampshire than the Southern District of Florida.  New Hampshire's corporate headquarters are in New York City. (Complaint, ¶ 2.)  New Hampshire finds it more convenient to bring its representatives to Chicago than to Miami, and its choice should be given deference.  Therefore, this factor weighs in favor of keeping the litigation in the Northern District of Illinois.

### 4. Convenience of the Witnesses

The convenience of the witnesses is "the factor often viewed as having the most weight in determining whether to transfer venue." *St. Paul Fire & Marine Ins. Co. v. Brothers Intl. Corp.*, 2006 WL 1543275, *4 (N.D.Ill. 2006).  Courts look at the "nature and quality of the witnesses' testimony, not merely the number of witnesses in each venue", and the party seeking transfer must include "a generalized statement about what their testimony will include." *Id.*; *Vandeveld v. Christophe*, 877 F.Supp. 1160, 1168 (N.D.Ill. 1995)(finding that movant failed to establish relevance of testimony of witnesses in potential transferee court).

Green Dragon asserts that the numerous witnesses in this case will be grossly inconvenienced should the matter proceed in this district.  This is a mischaracterization of the actual inconvenience, if any, to the witnesses.  First, Green Dragon names Captain Dan Osley and the other persons on the yacht at the time of its mechanical problems, as necessary witnesses in this case.  Captain Osley is an employee of the defendant and, as a party witness, the relative convenience for him is not given great weight. *Brothers Intl. Corp.*, 2006 WL at *4.  Green Dragon does not provide any guidance as to why the witnesses who were on the yacht on the day of the loss would be necessary witnesses at a trial regarding insurance coverage for the loss.  Any potential testimony from these witnesses would not be relevant to the issues in this case, which address whether the loss and subsequent damage to the vessel is covered pursuant to the Policy.  Marine surveyors for both New Hampshire and Green Dragon (presumably) have already reached conclusions as to what caused the vessel to take on water; therefore, testimony from these witnesses is simply not necessary. *See Lafarge*, 474 F.Supp.2d at 483-484 (finding that witnesses with knowledge regarding the circumstances of a barge's unmooring were irrelevant to issue of policy coverage.)

It is further alleged that Shawn Osley has been retained to repair the vessel, and he is a necessary witness.  The issue of repairs is likewise not relevant to the main inquiry in this action because it has nothing to do with the cause of the loss, and whether Green Dragon is entitled to

9

coverage for this loss as set forth by the terms of the Policy. Even if it is determined that Shawn Osley is a necessary witness, the relative inconvenience of one witness is not sufficient to establish that the Southern District of Florida is a clearly more convenient forum.

Green Dragon further names several entities involved in towing the vessel as potential witnesses. Again, there is no explanation given as to the nature and quality of these potential witnesses' testimony, and why their testimony would be required in a declaratory judgment action relating to the interpretation of an insurance policy. As such, Green Dragon has failed to satisfy its burden of proof in this regard. In fact, these witnesses have no knowledge regarding the cause of the loss, and their only involvement was for a short period of time in order to help the vessel out of distress. The details of how the yacht was hauled back to shore have no bearing on the declaratory judgment action, which is concerned with the cause of the loss, and whether that cause falls within the explicit coverage of the Policy.

On balance, the witnesses listed by Green Dragon will have no knowledge regarding the terms of the insurance policy, nor will they have information regarding the actual cause of the loss, which will be established through expert testimony. Therefore, the relative convenience of these witnesses in testifying in this matter does not weigh in favor of transfer.

Green Dragon also references marine surveyors and a metallurgist who have provided professional investigations regarding the loss, as well as a marine surveyor who surveyed the vessel prior to the loss. All of these professionals have or will render opinions regarding this loss and the condition of the vessel, and their testimony will likely be in the nature of expert witness testimony. The convenience of expert witnesses is irrelevant in determining whether to transfer venue, "since it may be presumed that witnesses who are paid to testify will appear at trial irrespective of the location of the forum." *Bodine's, Inc. v. Sunny-O, Inc.*, 494 F.Supp. 1279, 1286 (D.C.Ill. 1980). Expert witnesses are typically called upon to travel all over the county, at the expense of the party they are working for. New Hampshire intends to make its expert witnesses available in Chicago for both discovery and trial, if needed. Therefore, the relative convenience or inconvenience of these witnesses should not be given any weight.

Contrary to Green Dragon's assertion, a number of witnesses are located in the Northern District of Illinois. Most importantly, Mr. Dombrowski is a resident here, despite his curious willingness to make himself available in another forum. Mr. Dombrowski provided all information relevant to the insurance application, as well as a compliance letter confirming that

10

certain repairs had been made prior to the binding of coverage. (Arndt Affidavit, ¶¶ 8-10.)  Mr. Dombrowski prepared a detailed letter regarding the events surrounding the yacht's mechanical problems, sent from his office in Chicago. (Smith Affidavit, ¶ 4.)  Mr. Dombrowski's insurance broker, Mesirow Financial, is also located in this district. (Arndt Affidavit, ¶ 4.)  Representatives from Mesirow Financial will likely be called as witnesses to establish what was represented during the underwriting process as to the condition and loss history of the vessel.  In addition, Mr. Dombrowski submitted a repair invoice for repairs allegedly made to the vessel from R&K Construction, Inc., a company located in Elk Grove Village, Illinois. (Smith Affidavit, ¶ 9.)  The person who performed those repairs will likely be a material witness because a primary issue in this case will be the condition of the vessel prior to the events of November 19, 2007.  These are all important witnesses who are located in this district, and their convenience must also be taken into consideration.  Further, these witnesses are third parties and are not within the subpoena power of the Southern District of Florida, and it will be much more difficult, if not impossible, to compel their appearances for depositions and at trial.

   Courts have also considered whether a case is expected to go to trial, or whether it may be decided on summary judgment, as relevant to this determination. *See, e.g. Evangelical Lutheran* at 823 (holding that availability of evidence and convenience of the parties was not important because the matter would likely only require interpretation of underlying complaint and insurance policies).  In this case, the court is asked to interpret a policy of insurance.  It is likely that this case will ultimately be determined by summary judgment, obviating the need for any witnesses to be inconvenienced.

   On balance, Green Dragon has failed to establish that the relevant witnesses will be so inconvenienced as to require a transfer based on this factor.  The mere fact that one or two witnesses might not reside in this forum is simply not enough to tip the balance in favor of transferring this matter to the Southern District of Florida.

       **5.  Interests of Justice**

   In interpreting whether transfer would be in the interest of justice, courts review a number of factors, including:

> 1) whether a transfer promotes the 'efficient administration of justice', 2) whether the action could be consolidated with other actions in the transferee district, 3) whether the judges in the transferee district are more familiar with the pertinent state law, 4) whether jurors in a particular district have a 'financial interest in

> [the] case, and 5) which district would have jurors that could 'best apply community standards.'

*FILCO* at *2, *citing Coffey*. Each of these factors supports maintaining the case in the Northern District of Illinois.

First, this Court is undoubtedly more familiar with the applicable law than the Southern District of Florida. New Hampshire asserts that this is a policy of marine insurance, and is, therefore, subject to analysis under general maritime law. However, in the absence of established general maritime law on a particular subject, the otherwise applicable state law will govern. *See generally Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310 (1955). In this case, Illinois law would apply in the absence of general maritime law, as Illinois is the state in which the policy was negotiated and issued, this is where the insured is domiciled, and it is where the insured risk is located for part of the year. *See, e.g. Evangelical Lutheran Church in America v. Atlantic Mut. Ins. Co.*, 973 F. Supp. 820, 822 (N.D. Ill. 1997)(interpreting Illinois choice of law considerations). Further, Green Dragon has already asserted that Illinois law applies to the interpretation of this insurance policy in its Complaint in Florida. (See Green Dragon's Complaint, ¶ 5.) The courts of the Northern District of Illinois are better suited to decide the issues here in the context of Illinois law. "[C]ourts in this district frequently have found differences in contract law … to be significant when considering motions to transfer." *Brother Intl.*, 2006 WL at *5 (compiling cases in Northern District of Illinois that have found the interests of justice are better served in having Illinois law issues decided by local courts.)

In addition, Illinois has a greater interest in having this suit decided here. At its heart, this suit involves whether or not a corporation doing business in Illinois is entitled to insurance coverage. It involves the interpretation of an insurance policy and whether a corporation doing business in Illinois, and owning a vessel that spends much of each year berthed in Illinois, is entitled to insurance coverage; something in which Illinois citizens have a great interest. The fact that the vessel happened to take on water off the Florida coast does not create any significant interest in this case by Florida citizens. The location of the vessel at the time of the incident has no bearing on the interpretation of the policy, and, therefore, this matter should be decided in this venue, in which the citizens have a greater interest in the outcome of the litigation.

With respect to the length of time it might take for this case to reach resolution in each of the respective districts, Green Dragon has offered no evidence and thus fails to establish that

12

transfer to one jurisdiction would provide a speedier resolution of this matter. To the extent that there are differences between these two districts, both in major metropolitan areas with presumably busy dockets, any such difference should not weigh in favor of one jurisdiction over another. Likewise, the fact that Green Dragon's complaint for breach of contract is currently pending in the Southern District of Florida does not weigh in favor of transferring it there. New Hampshire filed its action in this district first, and Green Dragon must have been aware of it prior to filing its own action in Florida state court; New Hampshire sent a copy of the Complaint and associated documents to Mr. Dombrowski on March 7, 2008 via certified mail, and sent a courtesy copy of the Complaint to his attorney on March 7, 2008. There has been no substantive activity in the Florida matter, and Green Dragon has not requested that it be consolidated with this action. To the contrary, Green Dragon has agreed to stay the Florida litigation pending this Court's determination regarding venue.

In summary, the bulk of the factors weigh in favor of retaining this matter in the Northern District of Illinois, consistent with New Hampshire's choice of forum. Several witnesses are located in this district, including the defendant, and the interests of justice will be better served by having a court that is familiar with the nuances of Illinois insurance law handle this matter. The most important testimony will come from expert witnesses on both sides, who will be compensated for their services and the nature of their profession typically requires them to travel. The vessel has already been inspected, the cause of the loss has been determined, and the experts have already come to their conclusions regarding this loss. Thus, there is no reason to transfer this matter to Florida. Although part of the events leading up to this matter occurred off the coast of Florida, those events are not material to the questions raised in this lawsuit, and the necessary evidence will be easily accessible in this forum. Finally, Green Dragon has provided no evidence that Southern District of Florida would offer a significantly speedier resolution of this matter, and Florida residents have no real interest in the outcome of this lawsuit, which involves whether a corporation residing in Illinois is entitled to insurance coverage on a vessel that spends part of its time in Illinois waters. Therefore, Green Dragon has failed to satisfy its burden of establishing that transfer to the Southern District of Florida would be clearly more convenient than retaining jurisdiction in this Court.

## **CONCLUSION**

For all of the foregoing reasons, Green Dragon's motion to dismiss, or in the alternative, transfer, should be denied. Venue is proper in the Northern District of Illinois as Green Dragon is located here and accepted service in this district. Further, this case does not warrant transfer to the Southern District of Florida for the reasons outlined above.

Respectfully Submitted,

NEW HAMPSHIRE INSURANCE COMPANY

By: /s/Stephanie Espinoza
      One of its Attorneys

Dennis Minichello
Stephanie Espinoza
Marwedel, Minichello & Reeb, P.C.
10 South Riverside Plaza, Suite 720
Chicago, IL  60606
(312) 902-1600
Attorney No.: 35367

**CERTIFICATE OF SERVICE**

    I, Stephanie Espinoza, an attorney, certify that on this 25th day of April, 2008, I electronically filed New Hampshire Insurance Company's Response in Opposition to Green Dragon Trading Company's Motion to Dismiss for Lack of Venue or, In the Alternative, to Transfer with the Clerk of the Northern District of Illinois via its CM/ECF system, which will send a notice of electronic filing to the following counsel:

- **George B. Collins**
  email@cb-law.com
- **Dennis Minichello**
  dminichello@mmr-law.com,jturner@mmr-law.com

                                                        /s/ Stephanie A. Espinoza
                                                           Stephanie A. Espinoza